All right. Welcome to the West courtroom panel. I am very happily reinforced by two judges that bring a lot of intellectual firepower to this. So if I miss it, I'm very confident that they will get it. Judge Carolyn King over here to my right and Judge Priscilla Owen. So I'm the Louisiana guy in the middle, and I will be trying to decipher it through. But we've got a real variety of cases on the docket for this week, and we appreciate your oral argument to help us with it. One of the things to say is just to try to stay in the microphone. Sometimes you wander away. The tape doesn't pick up real well, but as long as you do that, you should be good to go. All right. First case up, Puga v. RCX Solutions. Ms. Fowler. May it please the court. This case was tried so that the jury could determine which of two small trucking companies was the motor carrier. A very narrow issue was tried, and a very narrow issue really is here on appeal. And that is, was RCX vicariously liable for Brown, the driver of the truck in the accident, because it had a lease with him and because it was the motor carrier in the transaction? This is the claim the parties tried. The question that was given to the jury was based on the leased motor vehicle statute, 49 U.S.C. section 14102, taken verbatim from that section except for the failure to include the term motor carrier. Every question, almost, any witness who could discuss the issue was asked, is RCX a motor carrier? Is about time a motor carrier? Is RCX a broker? Was there a lease? Those terms infiltrated the entire trial. Counsel for plaintiffs recognized that the statute included the term motor carrier. The court in informal charge recognized, ultimately, we're asking the jury, who was the motor carrier? And yet, question two, the liability question, failed to mention either a lease or a motor carrier. The jury on this record, the jury was bound to answer yes. But that yes question doesn't establish liability because there was a fact issue on whether or not RCX was the motor carrier for this transaction. And the failure to find, get an answer to that broker, the failure to do either of those fails to establish liability and results in a judgment that's not supported by the jury verdict. We've raised five issues before the court. I'm sure I won't be able to get to all of them. But I will point out that the judge, the court already has to reverse this case because the trial judge refused to credit the award with the settlement amount of a million dollars. The PUGAs have not objected to that, and they agree that the settlement credit should be applied. I intend to, unless the court, and I'm sure it will ask me many questions, but I intend to address really only the failure of vicarious liability, the lack of evidence proving as a matter of law that RCX was the carrier, that it was in fact the broker. I want to address that the automatic imposition of vicarious liability promulgated the regulations. And then finally, if any time is left, I will address the excessiveness of the loss of consortium damages. Any issue that I don't get to address, I will leave for the brief to answer. So first, question two. Again, this lawsuit, at least the trial portion of it, was based solely on 49 U.S.C. 14-102 and the regulations that were promulgated regarding it. Those are 49 CFR 376-11 and 376-12. The so-called statutory employee doctrine, which was frequently discussed among the lawyers and the judge, arises from section 49 CFR 376.12C1. And I have given the judges a sheet of paper, a small sheet of paper. I just had my secretary type out the statute and regulations and the charge question. But the statutory employee doctrine arises from 376.12C1. That's called the control regulation. And it says, the lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration. So this was the basis for the suit. Plaintiff's counsel— Well, let me ask you just kind of a fundamental question. My recollection, though maybe errant, on the motor carrier, I thought the jury instruction that the judge gave pretty much mirrored what the statute said. So my question is, was there a specific tailored instruction on the point you're making that you proffered, that in a hearing or otherwise the district court refused to give, and so that's kind of at issue, or exactly what? So, Judge, what we're claiming is the question fails to establish liability from the get-go. So that this is not just a vague question. The question failed to ask if we were the motor carrier. We did object. There were several charge conferences, several charge conferences. And at the request of the lawyers for RCX, the judge incorporated all of those discussions into the record and into the objections to the charge. And so counsel for RCX objected that the question didn't ask if RCX was acting as the motor carrier. We also objected at the time that it did not ask if we entered into a lease with Mr. Brown. So we objected. We informed the judge what it didn't have. And this is not a vague question. The plain error rule doesn't apply here because what we're arguing is that this question failed to establish liability. You say in your reply brief that we should look at the record 6267-70, and I confess I didn't go to the record and look. I'm sorry? Your reply brief says that you talked about the motor carrier issue on the record at 6267-70, and I didn't go look. But if we go look at that portion of the record, we'll find where you talked about the words motor carrier specifically. Judge, I don't have the page numbers memorized for the motor carrier, but yes, we did object on the basis of the motor carrier. And when I go back to my place, I will check and make sure that it's at that point. But it was on day four of the trial at the end of the day, and that sounds right. So the failure of the question to include the term motor carrier is significant when you look at the definition of broker and motor carrier. Because they are both pretty much the same. So, and the issue with this trial was, the defense was, we were a broker. We were a broker for this transaction. Plaintiffs claimed you were a motor carrier. And so, the definition, the question, lists only language that applies to both a motor carrier and to a broker. So answering yes to it doesn't resolve the fundamental issue at trial that every, almost every witness testified to, which was, was RCX a broker in this transaction, or was it the motor carrier? And without that term in the question, the question does not establish liability. If the court has no other questions on that, I want to talk a little bit about the proof in the record with regard to lease and who was the motor carrier. If the question doesn't establish that RCX was the motor carrier, because it fails to ask that, the proof in the record does not show, as a matter of law, that RCX was the motor carrier. Only three pieces of evidence arguably show that RCX was the motor carrier. First, RCX was an authorized motor carrier. They were, generally. But the question in this case was, were they the motor carrier in this transaction? And the case law recognizes that trucking companies, they wear more than a single hat. In fact, counsel recognized this in his, Pucas counsel recognized this in his brief on a statutory employment issue. He, I'm quoting, under federal law, a transportation entity may have authority to operate as both a broker and a carrier. We testified that we were both a broker and a carrier. We introduced more than 40 documents which listed RCX as the broker for this particular shipper. And we, there was no evidence introduced that we had a lease with Mr. Brown for this transaction or ever, ever had a lease with him. The other piece of evidence that plaintiffs relied on to argue that we were the motor carrier was the bill of lading. The bill of lading, which is prepared by the shipper, does state that we were the carrier. We intended to be the carrier. But our truck broke down. And that's how Mr. Brown became involved. Mr. Brown, about time, was an authorized motor carrier. We called him to transport the load, to pick up the load as the motor carrier. I want to just briefly cite the court to a couple of cases. The cases recognize that companies wear different hats. The Cruz v. Lopez case that we cited in the letter that we filed with the court last week, it and cases therein discuss the fact that companies will change their position, what they're acting as, based on the transaction. I would also cite the court to Essex Insurance, which is in both briefs. That court also recognizes you have to look at the particular transaction to determine whether a company is the motor carrier. And Zumba Fitness and SRAM v. Foster, I believe both of those are in the record, in the briefs, recognize that the designation on the bill of lading as carrier is not controlling. And then finally, I want to address before I have to sit down, one more point, which is the claim was that we never proved that we were a broker. At worst, there's a fact issue. At worst, that we were a broker in the case. But failing to be a broker doesn't transform us into the motor carrier for this transaction. The only other piece of evidence that they had to show that we were... What could they have been if they weren't a broker? Well, they could have been an assigner, but they're really... That was the only position that we took at trial, is that we were the broker and that they were the motor carrier. I will just point out that their expert gave conclusory testimony that we were the motor carrier only because we were not licensed to be a broker. That also doesn't transform us into a motor carrier. And I take it based on all that you've said that in arguments to the jury, you argued, if not you personally, but the position you just took based on the instruction and the evidence, I assume you vigorously argued that to the jury. Is that a fair conclusion? No? We did argue that we were the broker. And actually, the plaintiff's lawyer did not argue that we were the motor carrier because the question didn't ask about that. He didn't argue that we had a lease because the question didn't ask that. In fact, he pointed that out to the jury. This question doesn't ask if there's a lease. So this question, the court was responsible for instructing the jury, for giving the jury a question that when answered, yes, would support a judgment. And arguments of lawyers are just that. I understand. I well understand that it's not evidence. Nonetheless, arguments of counsel can be quite helpful to a jury in terms of kind of seeing where you want it to go. And so I get your legal arguments in terms of, A, where the trial judge may have made a miscue and so forth. I was just sort of asking, not that that's the cynic or none, but I'm assuming you're not making an argument to us that you didn't ably make to the jury. Ladies and gentlemen of the jury, you got A, B, and C. Boom. You know, we're not a broker, da, da, da. I'm just trying to satisfy my curiosity that that was the position taken that you wanted the jury to follow. Is that fair? Or another way to ask it, because of the impediments of what you said about the charge, et cetera, or you argued that that was an impediment to having made that argument to the jury. In other in the charge from making the very argument you would have wanted to make to the jury. Do you follow my question? Yes, I do, Judge. So here's the problem. We argued we were the broker. We argued that about time was the motor carrier. But the question did not use the term motor carrier. It only asked if there was an arrangement for Brown to transport property for us using his truck, not our truck. And that didn't establish that we were the motor carrier. Plaintiff's counsel didn't really argue, didn't argue that we were the motor carrier. He didn't have to. All he said was, look, the question is asking exactly what happened that night, which is that we arranged for Ron Brown to transport property for us using his truck. So it did prevent us really from arguing about the motor carrier and saying, look, they have to prove that we were the motor carrier. They didn't do that. We couldn't argue that. Okay. I appreciate your time. Thank you, Judge. Thank you for the clarity. You've reserved your rebuttal time. Thank you. Thank you. All right. Ms. Hogan? May it please the Court. The question you began with, Judge Stewart, on whether there was an appropriate objection or a specific request that would point the trial court to the complaint that is now being raised on appeal, the answer to that question is no. There was not a specific request, nor was there a specific objection that was made. It is correct that these parties talked about what was ultimately question two in this jury charge for days, from the pretrial conference right through to the formal charge conference. And there was an enormous amount of back and forth about how the question should be submitted, how it was going to be submitted. And all of that led up to what was finally said by Mr. Moy, who was counsel for RCX, on the last day of the informal charge conference, or the last day in which there was an informal charge conference, which was on August 10, 2017. And there was much discussion, and that includes some of the points, some of the pages that you asked about, Judge Owen. And on those pages, so early in the discussion, the Court remarks, I believe I told you all when we discussed this last Friday, and I haven't questioned two. I'm discussing the statutory employer question. Really, do you all have anything else on that? Mr. Moy said, nothing you haven't heard. And, Your Honor, this is starting at ROA 62.65. Then the Court draws Mr. Moy out a little more. And there it is, on page 6266, Mr. Moy says, it would benefit by saying the time of the collision between Mr. Brown and Mr. Pugo was RCX a motor carrier, transporting property under an arrangement with Ronald Brown. And then Mr. Moy continues, this is at 62.67, so since we've been fighting over who's a motor carrier and who isn't the whole case, there's certainly no harm in charging the jury on whether or not the motor carrier was RCX the motor carrier. Then the parties in the Court move on and talk about other charge issues, and then the Court comes back and suggests that I think I'm going to submit it as per the statute. We can discuss that further, because I want to do, when you get something in your hand, you all can look at it a little bit more. We'll talk a little bit more informally about it, and then you can walk out with a fairly clean copy and then come back. And Mr. Moy clarifies with her, with the Court, when you say per the statute, does that include then a motor carrier which is in the statute? The Court responds, I'm going to phrase it probably the way we discussed when we had the last final pretrial conference, and we can discuss it further after I give you a copy of the proposed jury instructions, okay? And then, after all of that discussion, a few pages later in the record, this is at ROA 62.74, Mr. Moy says, can we go back and visit question two again? Judge, I've got a problem with question two. The Court says, I know we can talk about it a little bit more, but you know, it's all the language in question two goes to motor carrier, and you can argue your points in that, but I get your point, and you're going to I'm going to make, this requires us to make a lengthy record. I understand where your honor is coming from, and we appreciate, frankly, the guidance you've given us in the last few weeks. The Court, yes, it's hard. Mr. Moy, I don't have a problem with it, or may not, frankly. I guess we finalize that tomorrow, and the Court said yes. That's at page ROA 62.75. That's how it got left at the informal charge conference. Mr. Moy said he may or may not have a problem with question two, and he would let the judge know tomorrow. When tomorrow came, Mr. Moy did not object that the he did not propose a question. He did not tell the Court how the question should be revised to make his point any clearer, and so the Court was left believing that Mr. Moy, except for the problem that it didn't include the word lease, was satisfied with the charge as it was given, and then, as Mr. Moy no doubt went home and decided before he came to argue the case the next day and before he made his charge, his formal charge objections and requests, he figured out he had no problem with the question. He was going to be able to argue to the jury exactly what he wanted to argue to the jury about being a motor carrier or not, and he did so, and both sides did so, and if you read the final arguments of both sides, you will find that the parties are going back and forth over whether RCX could have been a motor carrier or a broker, whether RCX was in fact a motor carrier or a broker, and the jury heard everything that it could possibly have needed in order to answer the question, and again, Judge Stewart, you are absolutely right in pointing out that the law of this circuit is that if you can't show that you were somehow prohibited from making an argument to the jury about the issue in the case and you were in fact able to make your arguments and the jury understood the issues in the case, then there can't possibly be any jury charge error. It everybody made the arguments. The jury understood the issues, and again, in our brief, on page 35 of our brief, we quote, and RCX's attorney said this, your question is essentially plaintiff's counsel, he used plaintiff's counsel's name, just said, if you think we're the broker, then that's a no to question two, and that is in fact what plaintiff's counsel had told the jury. So both sides were talking to the jury about broker versus motor carrier. There is no harmful error in this jury charge if there was any jury charge complaint that was preserved. Then I want to turn secondly to this issue of is there any evidence, is there actually any factual fight over whether RCX was a broker or a motor carrier in this transaction, or whether this is a legal question for the court, and it is a legal question for the court. The reason that this is a legal question for the court is because it is undisputed that RCX was not a licensed broker. It did not hold a broker's license ever at any time relevant to this transaction. What RCX is arguing is that, oh, I wasn't, we weren't a licensed broker, but still, even though we weren't a licensed broker, we should get the benefits under the law, and you should apply the law about licensed brokers to us as if we were a licensed broker. I'm not a lawyer, but I want you to treat me like a lawyer here today. I'm not a policeman, but I pretended I was a policeman so I get all the benefits of being a policeman. That's not the way the law works. That's not the way any of the case law works. It is true that under the statutes and regulations, a motor carrier can also be licensed. A licensed motor carrier can also hold a license as a broker, but you have to be licensed to be a broker. It's not something you just get to claim on your own. You must be licensed by the Secretary of Transportation, and RCX was not licensed by the Secretary of Transportation, so it could not have and did not have the ability to broker this transaction. So that's the first and most important point. This court should not write an opinion that says that a licensed motor carrier can act without being licensed as a broker in a particular transaction. That is contrary to the definition and the rules of the court. The federal regulation, 49 CFR section 371.2A, provides that motor carriers are not brokers when they arrange or offer to arrange the transportation of shipments which they are authorized to transport and which they have accepted and legally bound themselves to So that regulation determines that a motor carrier, even if the motor carrier offers to arrange the transportation of shipments, is not a broker when that motor carrier is authorized to transport and has accepted and 49 CFR 371.2A. Under that definition, we have RCX. It's undisputed. That's one of the facts that Ms. Fowler also acknowledged. This is a motor carrier, a licensed motor carrier. Not only was it a licensed motor carrier, it was the licensed motor carrier that arranged to transport and legally bound itself to transport this particular shipment. That is why it is on the bill of lading. But all of the testimony in this case was that Sunset Transportation, an unrelated company to anybody else in this case, Sunset Transportation brokered the deal between Albia L'Oreal, those Albia L'Oreal, the shipper and receiver, Sunset stepped in and said I will broker a transportation for you. Sunset went to Albia L'Oreal and said I will find you a motor carrier. And it did. And the motor carrier it found was RCX. So Sunset brokered this deal. RCX agreed to transport this product. It legally bound itself to transport this shipment. So it's a motor carrier that was agreed to and was legally bound to transport this shipment. Under 49 CFR 371.2, that ends the issue. Because a motor carrier is not a broker when it arranges or offers to arrange the transportation of shipments which it is authorized to transport and which it has accepted and legally bound itself to transport. As a matter of law, RCX falls squarely within that definition. It claims that what it did was broker an agreement with about time so that it wouldn't, they wouldn't actually be acting as under a leasing type arrangement, but would instead, they could insulate themselves from liability. But because it was a motor carrier, RCX was a motor carrier authorized and legally bound to transport this shipment, it could not act as a broker for that shipment. And in fact, it wasn't licensed as a broker, so it could not possibly act as a broker and gain any protections as a broker under the statute. And so for that reason, this whole issue ought to be resolved simply as a matter of law, that it is not a broker. It could not be a broker. And therefore, we don't even reach the charge error question, because it matters not. But if we do reach the charge error question, then there is no preservation. But even if there were, in this case, there is no harmful error, because the jury understood that they had heard all of the evidence, they had heard everyone going back and forth about how it was illegal for the RCX to have acted as a broker, how it wasn't licensed, it heard RCX confess that it knew it wasn't a broker and that it had acted illegally, but still it should be considered to be a motor carrier. The jury heard all of that evidence, they heard all of the arguments, and they answered question two. There is just no substantial harm or harm of any kind that RCX is able to identify. And it hasn't identified in its briefing any harm that it actually experienced or what it wasn't able to say or how the why the jury would have possibly answered the question differently if the words motor carrier had been used. Lastly, I just don't want to sit down without simply mentioning, it appears that we are not reaching this issue of the viability of the statutory employee doctrine in this court. But I do want to reiterate two points. One, that argument on viability of the statute, of the statutory employee doctrine, viability of the statutory employee doctrine is not preserved. And this court could reach it only under plain error, and plain error would not allow the court to reach it because it can't possibly be plain error when what is being asked of this court is to overrule decades of existing holdings from this court. And then secondly, I would just also say that on that question, there is no basis for the court overturning its 45 years' worth of decisions recognizing the statutory employee doctrine. The court is not riding on a clean slate here. It's following on the heels of at least 15 cases, probably more, that touch on these issues. And it is not the PUGAS statutory construction or regulatory construction that is at issue here. It is this court's prior statutory and regulatory construction because this court has determined what these statutes and regulations require and that they impose upon carrier lessees when they enter into arrangements with other motor carriers. Thank you very much. We ask that the court affirm the trial court's judgment with the exception that we do not oppose the court applying a settlement credit in favor of RCX. So is that something, assuming all, well, we need, assuming your argument and we affirmed would we need to fix that as a plenary matter here or we just would be affirming and sending it back to the district court to reform that? I'll take it the latter. I believe, your honor, you can do it either way. I think you can simply reform the judgment to include a settlement credit or you can simply remand it for the court to calculate and reform the judgment to include a settlement credit. Okay. All right. Thank you. That will not be a problem. As we said in our brief, there was no reason for RCX to appeal this case if it simply wanted a settlement credit. Okay. All right. Thank you. All right. Back to you, Ms. Fowler. Do I get the rest of Ms. Hogan's excess time? No, ma'am. Oh, okay. I didn't think I did. When your kids ask you the question, they already know the answer. They ask it anyway. It was that kind of question, your honor. Yes, it was. I saw it coming. So we're getting into semantics here. And I want to, counsel is arguing that the charge doesn't have to be perfect. And we're, with this question, we're way beyond that. That's not the issue. So let me give you an example. Assume that RCX, it's generally a motor carrier, orders a truckload of paper from Hammer Hill Company. Hammer Hill Company drives the goods to RCX's office. The truck driver has an accident on the way. On this question, on this question that was asked the jury, under that fact scenario, RCX would be found liable. At the time of the collision between the Hammer Hill truck and the plaintiff, was RCX using motor vehicles it did not own to transport property under an arrangement with Hammer Hill Company. So you get all your quality time. I'm assuming you're re-urging with ever more vigor the predicate you laid about this when you were up the first time, right? So I mean, everything's, all right, I'm just honing in. All right, now I take it from the way counsel opposite argued this, a Mr. Moy, was the trial counsel on your side, or were you the lawyer below? No, no judge. All right, so your appellate counsel. Yes. All right, so I read the scenario. She was giving us chapter and verse as to how this was unfolding and yada, yada, yada. And so she puts her matter twofold. Number one, she says there was all this discussion, boom to boom. It didn't happen. It wasn't argued. It's not preserved. And then secondly, her argument just then was that it's a matter of law, so we don't need to get to that. So without you draining all the time to go all the way back to square one and remake that, address those two points of rebuttal. Number one, she says trial counsel pretty much acquiesced in the way this was framed, how the judge presented it, and so forth. So address that point. And then secondly, to the extent that's not there, she says they went as a matter of law. Quickly. Got it. First, we submitted a question asking if RCX was the broker. That was refused. We submitted that question. We made it clear that we, that the jury needed to find out, needed to decide if we were the motor carrier. And one of the ways we did that was by suggesting, asking the court to submit a question asking if we were the broker. We also objected in the informal charge, in the formal charge conference, that the question did not refer specifically to a lease and ask the jury if there was a lease. We argued that specifically. Both of those things, both of those objections get to the issue that we didn't believe this question asked what it needed to ask to get an answer to support the judgment. Very quickly, the case in the question is not whether we were a broker, it's whether we were vicariously liable because we were the question is for the Department of Transportation. And they have already decided that, to impose a fine if a company is not licensed. And there were numerous, more than dozens of documents reflecting that RCX was the broker with this particular shipper. So, there's a fact issue. This was, neither of these issues were established as a matter of law. There was a fact issue on what happened in this instance. Finally, Judge Owen, I was told that I misunderstood your question and that you were actually asking about where we preserve the language or equivalent on motor, are you a motor carrier, were you a motor carrier in this transaction? Yes, and it is where you said it was. All right, counsel, you've got a red light. Thank you, Judge. We ask that the court reverse and render in favor of RCX and at the very least remit the damages, loss of consortium damages, and give us a settlement credit. So, we're asking for reversal. Thank you, Judge. Thank you, counsel.